UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

CIVIL ACTION NO. 7:18-CR-00005-KKC-EBA-1

(Related Civil Case No. 7:20-CV-00069-KKC-EBA)

UNITED STATES OF AMERICA,                                              PLAINTIFF,

V.      **REPORT AND RECOMMENDATION**

CHRISTOPHER E. PARSONS,                                              DEFENDANT.

\*\*\* \*\*\* \*\*\* \*\*\*

Christopher E. Parsons, a federal prisoner, brings this action under 28 U.S.C. § 2255, seeking to vacate, set aside, or correct his conviction and sentence. [R. 76]. The Court recognizes that Parsons is proceeding *pro se* and construes his petition more leniently. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Castro v. United States*, 540 U.S. 375, 381–83 (2003). The United States has answered the petition [R. 83]. Parsons did not file a reply. Thus, the petition is now ripe for review.

**I. FACTS & PROCEDURAL HISTORY**

During an investigation into suspected drug trafficking, Kentucky State Police (KSP) outfitted a confidential informant with audio and video recording devices to attempt a controlled buy from Defendant Christopher E. Parsons. [R. 54 at pg. 3–4]. During the video, Parsons discussed with the informant the sale of an "8-ball" (slang term for methamphetamine) in addition to oxycodone, specifically "30s" (slang term for 30 milligram tablets of oxycodone). [R. 64 at pg. 25–28]. The video also depicts Parson loading ammunition into the chamber of a handgun. [*Id.* at pg. 28].

Based on this information, KSP and the Federal Bureau of Investigation (FBI) obtained and executed a search warrant at Parsons' residence in Pikeville, Kentucky. [R. 54 at pg. 4]. A KSP officer observed a male subject, later identified as Parsons, exiting the back of the residence during the search. [*Id.*]. KSP arrested Parsons and found numerous controlled substances and $1,152 on his person. [*Id.*]. The search of Parson's home revealed a surveillance system in the master bedroom; an unloaded handgun and ammunition laying on the bed; and an unloaded semi-automatic rifle in an open safe. [*Id.*]. The master bedroom also contained "multiple boxes of ammunition and magazines for different types of firearms, . . . several plastic bags, some of which contained small amounts of methamphetamine and marijuana, and a glass smoking pipe." [*Id.*]. The search of the living room revealed digital scales, several plastic bags, and other drug paraphernalia. [*Id.*]. Officers also discovered a handgun loaded with one round in the grass near the rear of the home and determined that Parsons has discarded it while fleeing the residence. [*Id*].

Following the investigation, Parsons was indicted by a federal grand jury on two counts: (1) knowingly possessing, with intent to distribute, methamphetamine, hydrocodone, oxycodone, and morphine in violation of 21 U.S.C. § 841(a)(1); and (2) knowingly possessing a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c)(1)(A). [R. 1]. He pled guilty to the drug trafficking charge, [R. 28], but proceeded to trial on the firearm possession charge.

At trial, Parsons did not testify. Prior to parties' opening statements, the Court made a preliminary admonition regarding Parsons' right to testify:

> THE COURT: . . . Mr. [Joseph] Lane (counsel for Parsons), it appears that your client, at least at this point, may not be planning on testifying. . . .
>
> MR. LANE: That's correct, Your Honor. We haven't made that decision, but I don't know that he's going to testify.
>
> THE COURT: All right. Now, Mr. Parsons, you and Mr. Lane will be talking about whether you decide not to testify, but it's very important that you understand that if you do testify, what you say can and will be used against you by the government and you will be under oath. Do you understand?

    THE DEFENDANT: Yes, Your Honor.

    THE COURT: And it's a decision that you should make in close consultation with your lawyer . . . .

[R. 64 at pg. 13–14].

When the United States completed its case-in-chief, the Court went into recess, allowing Mr. Lane time to confer with Parsons regarding whether he wanted to testify. After the recess concluded, Mr. Lane informed the Court that Parsons was ready for closing arguments. [R. 64 at pg. 81]. The Court asked Parsons directly if Mr. Lane "accurately reported [his] decision," to which Parsons responded, "[y]es, ma'am." [*Id.*]. The Court further verified that Parsons understood the benefits and risks of testifying, and that it remained his decision not to do so. [*Id.*]. After this final admonition, the Court allowed parties to proceed with closing arguments. [*Id.*].

A jury convicted Parsons on the possession of a firearm in furtherance of drug trafficking charge in violation of 18 U.S.C. § 924(c)(1)(A). [R. 40]. He was sentenced to a term of 111 months imprisonment and five (5) years of supervised release on Counts 1 and 2. [R. 52]. On May 26, 2020, Parsons timely filed the instant motion to vacate his conviction and sentence. [R. 76]. He asks this Court to vacate his conviction and sentence on a theory of ineffective assistance of counsel or, in the alternative, hold an evidentiary hearing. [*Id.*].

## II. STANDARD OF REVIEW

A motion brought pursuant to 28 U.S.C. § 2255 is a collateral attack on a conviction. A prisoner has a statutory right to collaterally attack his conviction or sentence. *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). For a federal prisoner to prevail on such a claim, he bears the burden of showing: (1) his conviction resulted from an error of constitutional magnitude; (2) his sentence was imposed outside the statutory limits; or (3) an error of fact or law occurred that was so fundamental as to render the entire proceedings invalid. *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003), *cert. denied*, 540 U.S. 879 (2003). If the prisoner alleges

constitutional error, he must establish by a preponderance of the evidence that the error "had a substantial and injurious effect or influence on the proceedings." *Watson*, 165 F.3d at 488 (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)). Alternatively, if he alleges a non-constitutional error, he must establish "a fundamental defect which inherently results in a complete miscarriage of justice . . . an error so egregious that it amounts to a violation of due process. *Watson*, 165 F.3d at 488 (citing *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)).

### III. ANALYSIS

#### A. Ineffective Assistance of Counsel

As a threshold matter, the Court notes that Parsons' § 2255 petition enumerates one theory of ineffective assistance of counsel: that counsel coerced him not to testify on his own behalf at trial. However, an "appropriate liberal construction" of the petition requires the undersigned to "active[ly] interpret[]," and, in some cases, "construe a petition 'to encompass any allegation stating federal relief.'" *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985) (quoting *White v. Wyrick*, 530 F.2d 818, 819 (8th Cir. 1976)). While most of the petition argues that he was coerced into withholding his own testimony at trial, Parsons briefly implies that counsel failed to advise him of his right to testify. [R. 76 at pg. 10]. Although Parsons devotes no analysis to this allegation, it is nonetheless a cognizable claim of ineffective assistance of counsel that the Court shall address separate from the coercion claim below.

To successfully assert ineffective assistance, Parsons must show two essential elements for each claim: (1) deficient performance by counsel and (2) how "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984) (stating that "[u]nless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable").

First, regarding deficient performance, reviewing courts "indulge a strong presumption that

counsel's conduct falls within the wide range of reasonably professional assistance." *Id.* To show representation fell below an objective standard of reasonableness, Parsons must articulate specific acts or omissions to show how counsel's performance fell "outside the wide range of professionally competent assistance." *Id.* at 690. Courts must make "every effort" to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Thus, Parsons bears the burden of showing that his counsel "made errors so serious that the counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

Second, Parsons must also establish prejudice by showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of his proceedings would have been different. *Id.* at 694–95. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 111–12 (2011) (citing *Strickland*, 466 U.S. at 696)). "When deciding ineffective-assistance claims, courts need not address both components of the [deficient performance and prejudice] inquiry 'if the defendant makes an insufficient showing on one.'" *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004); *Strickland*, 466 U.S. at 697. Further, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 691). "Counsel is constitutionally ineffective only if performance below the professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

### 1. Failure to Advise Parsons of Right to Testify

First, Parsons contends that his counsel, Joseph Lane, failed to advise him of his right to testify at trial. In essence, his argument is this:

> Counsel Lane had the principal responsibility to advise the petitioner of his right to testify and thereby to ensure the right is protected. Once Counsel Lane threatened to withdraw in the middle of the Petitioner's trial he violated the Petitioner's right to testify[,] denying . . . [Parsons] effective assistance of counsel.

[R. 76 at pg. 10]. The United States argues that his subsequent ineffective claim, that counsel coerced Parsons into withholding his testimony, "infers that [Parsons] was aware of his right to testify. . . ." [R. 83 at pg. 3]. The United States also refers to the record to support its assertion that Parsons was well-aware that he had a right to testify—namely, to the Court's admonishments during the trial. [*Id.* at pg. 3–4].

It is well-established that a defendant in a criminal case has the right to take the stand to testify in his own defense. *Rock v. Arkansas*, 483 U.S. 44, 49 (1987). "Although counsel should always advise the defendant about the benefits and hazards of testifying and of not testifying, and may strongly advise the course that counsel thinks best, counsel must inform the defendant that the ultimate decision whether to take the stand belongs to the defendant, and counsel must abide by the defendant's decision on this matter." *Bennett v. United States*, 663 F.3d 71, 84 (2d Cir. 2011) (quoting *Brown v. Artuz*, 124 F.3d 73, 79 (2d Cir. 1997) (emphasis omitted)). Thus, if counsel fails to inform a defendant of his right to testify, counsel ultimately "neglect[s] the vital responsibility of ensuring that the defendant's right to testify is protected and that any waiver of that right is knowing and voluntary." *United States v. Teague*, 953 F.2d 1525, 1534 (11th Cir. 1992) (en banc). This neglect amounts to deficient performance under *Strickland*. *Id.*

Indeed, if Mr. Lane failed to advise Parsons of his right to testify, it would amount to deficient performance. The United States appears to argue that Mr. Lane was not obliged to advise Parsons as to his right because of the Court's admonishments on the subject. [R. 83 at pg. 3–4]. Counsel's responsibility to inform criminal defendants of their foundational rights, such as the right to testify at one's own trial, cannot be delegated to the Court. In this Circuit, "[b]arring any statements or actions from the defendant indicating disagreement with counsel or the desire to

testify, the trial court is neither required to sua sponte address a silent defendant and inquire whether the defendant knowingly and intentionally waived the right to testify, nor ensure that the defendant has waived the right on the record." *United States v. Webber*, 208 F.3d 545, 550–51 (6th Cir. 2000). Here, the Court did so address the Defendant as to whether Mr. Lane had accurately reported Parsons' decision to not testify, but this admonition did not alleviate Mr. Lane of his duty to proffer advice about Parsons' rights, nor is it *prima facie* evidence that Mr. Parson had been informed of his right to testify.

Regardless, Parsons' petition does not provide any factual or legal support for a claim that Mr. Lane was derelict in his duty to inform Parsons of his right to testify. Rather, Parsons conclusively states that that Mr. Lane had a "principal responsibility" to advise him of his right to testify, [R. 76 at pg. 10], leaving the Court to infer Parsons' claim that Mr. Lane did not protect that right. Accordingly, Parsons does not provide a substantial showing that Mr. Lane's performance was deficient as to advising him of his right to testify.

Even assuming deficient performance, Parsons claim of ineffective assistance of counsel would fail because he cannot prove that such deficient performance prejudiced Parsons' defense. At multiple times during trial, both before trial began and after the United States rested its case, the Court addressed Mr. Lane and Parsons about Parsons' decision to testify.[1] [R. 64 at pg. 13–14; R. 64 at pg. 81]. Thus, Parsons would not have been prejudiced if Mr. Lane had failed to inform him of his right to testify, as Parsons was offered multiple opportunities to voice his concerns or disagreements with Mr. Lane. As Parsons has neither demonstrated counsel's

---

[1] The Court directly addressed Parsons to clarify that Mr. Lane was accurately reporting his decision not to testify, to which Parsons replied in the affirmative. [R. 64 at pg. 81]. At no point during trial did Parsons alert the Court to a disagreement with counsel. "[W]hen a tactical decision is made not to have the defendant testify, the defendant's assent is presumed," and if a defendant disagrees with this decision, he "must alert the trial court that he desires to testify or that there is a disagreement with defense counsel regarding whether he should take the stand." *United States v. Webber*, 208 F.3d 545, 551 (6th Cir. 2000)

performance was deficient, nor that the alleged deficient performance prejudiced his defense at trial, the first claim of ineffective assistance of counsel fails.

### 2. Counsel Coerced Parsons Not to Testify

Second, Parsons alleges that he received ineffective assistance of counsel because Mr. Lane coerced him to not testify at trial, specifically by threatening to withdraw during trial. [R. 76 at pg. 10]. He claims that he expressed to Mr. Lane his desire to take the stand after hearing the testimony of two law enforcement officers during the United States' case-in-chief. [R. 76-1 at pg. 2]. After hearing testimony regarding his possession of a gun, he claims he was certain that he would be found guilty if he remained silent. [*Id.*]. He further alleges:

> I told Counsel Lane that I was going against his advice and wanted to take the stand in my own defense. He told me it was a bad decision. I told him I did not care. I felt I had to do it. He and I went back and forth for a few minutes. Finally[,] he told me "[i]f you decide to testify I will quit as your attorney right now. I am not going to go along with you getting on the stand and making me look bad." . . . In light of Counsel Lane's threat to withdraw in the middle of my trial I very reluctantly agreed not to testify.

[R. 76-1 at pg. 2].

"It is beyond question that an attorney cannot threaten to withdraw during trial in order to coerce the defendant to relinquish his fundamental right to testify." *Nicholas v. Butler*, 953 F.2d 1550, 1553 (11th Cir. 1992). In habeas proceedings, the court indulges "a strong presumption that trial counsel adhered to the requirements of professional conduct and left the final decision about whether to testify with the client." *Hodge v. Haeberlin*, 579 F.3d 627, 639 (6th Cir. 2009)(internal citation omitted). To overcome this presumption, the petitioner must present evidence that he alerted the trial court to his desire to testify. *Mell v. Skipper*, No. 2:18-CV-11971, 2019 U.S. Dist. LEXIS 83262, at *36 (E.D. Mich. May 17, 2019) (citing *Gonzales v. Elo*, 233 F.3d 348, 357 (6th Cir. 2000)).

Parsons does not overcome the presumption that Mr. Lane's conduct fell within the wide

range of professional conduct. At the close of the United States' case-in-chief, Parsons stated on the record and under oath that he had agreed with counsel regarding the decision not to present evidence at trial. [R. 64 at pg. 81]. "'Solemn declarations in open court carry a strong presumption of verity,' and even though 'the barrier of the [court] record, although imposing, is not invariably insurmountable,' overcoming that presumption must nevertheless require considerable support in the record." *Williams v. United States*, No. 20-4335, 2021 U.S. App. LEXIS 16090, at *6 (6th Cir. May 27, 2021) (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). Apart from Parsons' conclusory allegations that Mr. Lane threatened to withdraw as counsel, the record does not support the claim that Mr. Lane coerced Parsons or otherwise prevented him from testifying at trial on his own behalf. Thus, his claim of deficient performance fails.

Regardless, Parsons likewise could not prove that the alleged deficient performance would have prejudiced his defense as he has not demonstrated a factual or legal basis for how his prospective testimony would have had a reasonably likelihood of bringing about a different outcome. In the Declaration attached to his § 2255 motion, Parsons suggests that he could have "help[ed]" with "the issue of whether [he] had a gun." [R. 76-1 at pg. 2]. Thus, Parsons appears to claim that his testimony would have shed light on whether he was in possession of the gun. However, he does not articulate in any detail what information he could have told the jury which would have put the element of possession in doubt.[2] The petition does not articulate any factual scenario that could have reasonably led to a different outcome, namely different verdict on Count 2 of the Indictment. Thus, Parsons' second claim of ineffective assistance of counsel fails on both prongs of *Strickland*.

### B. Evidentiary Hearing

---

[2] The jury was instructed on both "actual possession" and "constructive possession," thus limiting the impact of Parsons' hypothetical testimony regarding whether he "had" a gun. [R. 39 at pg. 13].

Finally, Parsons moves for an evidentiary hearing for the purpose of eliciting live testimony regarding the attorney-client communications between he and Mr. Lane. [R. 76 at pg. 11–12]. He contends that such a hearing is necessary because these communications occurred out-of-court and, therefore, the record cannot shed light on whether Mr. Lane threatened to withdraw as counsel. [R. 46 at pg. 12].

If there is a factual dispute in the record of a habeas proceeding, the court must hold a hearing to determine the veracity of the petitioner's claims. *Ross v. United States*, 339 F.3d 483, 490 (6th Cir. 2003) (citing *Turner v. United States*, 183 F.3d 474, 477 (6th Cir 1999)). However, "[w]here a § 2255 motion and the files and records of the case conclusively show that the moving party is entitled to no relief, . . . no hearing of any kind is required[,]" including an evidentiary hearing. *Green v. United States*, 65 F.3d 546, 547 (6th Cir. 1995) (citing *Bryan v. United States*, 721 F.2d 572, 577 (6th Cir. 1983), *cert. denied*, 465 U.S. 1038 (1984)).

Here, the record conclusively shows that Parsons is not entitled to any relief as to either theory of ineffective assistance of counsel. Parsons seeks an evidentiary hearing in order to build a record regarding his attorney-client communications with Mr. Lane and his alleged threats to withdraw as counsel. If those allegations were proven credible at an evidentiary hearing, they would only weigh in the Court's consideration of whether Mr. Lane's performance as counsel was deficient. As established above, Parsons claims of ineffective assistance of counsel fail on the second *Strickland* prong because he failed to demonstrate he was prejudiced by counsel's alleged deficient performance. Thus, regardless of the out-of-court communications between Parsons and Mr. Lane, the undersigned finds that the record conclusively shows that Parsons is not entitled to relief under 28 U.S.C. § 2255. Under these circumstances, no evidentiary hearing is required.

### IV. CERTIFICATE OF APPEALABILITY

A Certificate of Appealability may issue where a movant made a "substantial showing of

the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires a movant to demonstrate that "reasonable jurists would find that the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (stating that issuance of a Certificate of Appealability in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with equal force to motions to vacate brought pursuant to 28 U.S.C. § 2255); *see also Miller-El v. Cockrell*, 123 S. Ct. 1029, 1039–40 (2003). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. 28 U.S.C. § 2253(c)(3); *Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005).

Here, Parsons has not made a "substantial showing" as to any claimed denial of his constitutional rights. Moreover, the Court also believes that reasonable jurists would not find its determination on the merits debatable. Therefore, this Court recommends that the District Court deny a Certificate of Appealability.

## V. RECOMMENDATION

Accordingly, having reviewed Parsons' motion to vacate and attached Declaration [R. 76, 76-1] in accordance with Rule 10 of the Rules Governing § 2255 Habeas Cases, **IT IS RECOMMENDED** that,

1. Parsons' motion to vacate [R. 76] be **DISMISSED WITH PREJUDICE**.
2. Parsons' motion for an evidentiary hearing [R. 76] be **DENIED**.
3. A Certificate of Appealability be **DENIED** as to all issues raised herein, should Parsons so request.

*** *** *** ***

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Recommended Disposition. Particularized objections to this Recommended Disposition must be filed within fourteen days from the date of service thereof or further appeal is waived. *United*

*States v. Campbell*, 261 F.3d 628, 632 (6th Cir. 2001); *Thomas v. Ann*, 728 F.2d 813, 815 (6th Cir. 1984). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004); *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within fourteen days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); FED. R. CRIM. P. 59(b)(1).

Signed December 21, 2021.



Signed By:
*Edward B. Atkins*  *EBA*
United States Magistrate Judge